Battle, J.
 

 In considering the objections urged by the defendant, on the trial, against the right of the plaintiff to recover, we will notice first, that which denies validity to his subscription, because of his not having paid one dollar, on each share, at the time when he made it. The plaintiff owes its existence as a corporation to the act of 1852, ch. 108, the three first sections of which, prescribe the manner in which it shall be formed, and the name which it shall bear. The fourth section then enacts as follows : “ That upon any subscription of stock as aforesaid, there shall be paid at the time of subscribing, to the said commissioners, or their agents appointed to receive subscriptions, the sum of one dollar ,on every share subscribed, and the residue thereof shall be paid, or secured in such manner, and at such time or times as may be required by the board of directors of said company.” The defendant did not make the first payment, which was requir
 
 *84
 
 ed at the time of his subscription, and he contends that such omission or neglect made his subscription null and void, and that consequently, he never beeame a stockholder in the company. The answer to this is obvious. Neither the section above recited, nor any other part of the charter, declares the subscription void for the want of such payment, and, therefore, the very foundation of the objection, which occasioned the difficulty in the case of
 
 McRae
 
 v.
 
 Russell,
 
 12 Ire. Rep. 224, with regard to the 'Wilmington and Mancliester Bailroad Company is wanting. The State is not in any way interested in the company, either as a stockholder, or as a contributor to its funds, or as guarantor of its debts, and, therefore, it was a question solely between the company and the stockholders as to what should be the time, or the manner in which the amount subscribed should be paid. It may be, that at the first general meeting of the stockholders, the defendant might have been excluded from acting as one of them until he had paid the preliminary amount, required of him, according to the terms of his subscription, but they were not bound
 
 to do
 
 so, either by the terms of their charter or by any known principle of law. If they chose to trust him, for the money he owed them, it would be a strange rule, which would allow him to take advantage of their forbearance and his own neglect. They were at liberty to receive him as a stockholder, and if they did so, and he acted as one of them in organising the company, and in the regulation of its affairs, he cannot afterwards be heard to disavow his connection with it, and repudiate his contract to contribute to its funds.
 

 But he alleges, that there was no proper evidence, that he ever did act as a stockholder ; and this brings us to consider his objection to the testimony, which was allowed to be introduced to prove his proxies. This objection is easily disposed of. The written instruments, upon which it was contended, that his proxies appeared and acted, were clearly proved to have been throwned away, as waste paper, after they had been examined and verified by a committee appointed for that purpose. Those instruments must, therefore,
 
 *85
 
 be considered as having been destroyed, and it was idle to require proof that they had been searched for, before admitting secondary evidence of their contents. The true rule on that subject is well expressed in
 
 Robards
 
 v. Mclean, 8 Ire. Rep. 522, that a to admit secondary evidence, it is sufficient to show, that there is no reasonable probability, that any thing has been suppressed.”
 

 The last objection, which appears upon the defendant's bill of exceptions, is as far from being tenable as either of the others. The defendant’s subscription was, in effect, for eight shares of the capital stock of the company, amounting to $400, to be paid in lumber, at his own saw-mill, at a certain agreed rate. He undoubtedly had the option to pay for the amount of his subscription in that way, and the company so understood it, and were acting in good faith when they called upon him for the lumber. We cannot see the foree of the argument that, because his subscription was, by the consent of the company, to be paid in that manner, he did not become a stockholder until payment was made in full. The company would necessarily need plank for their road, and they had as much right to buy from the defendant as from any other person, and we are unable to perceive any 'difference between paying him with his own snbscription-money, and with any other funds belonging to them. He had the option of paying by delivering lumber at his mill in discharge of his contract, but when he first neglected, and then refused to avail himself of it, it became an obligation to pay money, and the company had the right, as in other cases, after the sale of bis stock, as prescribed in their charter, to sue him, in debt, for the sum thus ascertained to be the balance;
 
 Hamilton
 
 v. Eller, 11 Ire. Rep. 276. If this view of the case be correct, the eases of
 
 Grandy
 
 v. Small, 3 Jones’ Rep. 8, and
 
 Cole
 
 v. Hester, 9 Ire. Rep. 23, referred to by the defendant’s counsel, have no application.
 

 Pee C ueiam, Judgment affirmed.